IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MATTHEW MCCLUSKY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-25-3891 |
| ALLEGIS GROUP INC., *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION**</u>

Matthew McClusky ("Plaintiff") filed an Amended Complaint in this Employee Retirement Income Security Act ("ERISA") action against Defendants Allegis Group Inc. and The Committee for the Allegis Group Amended and Restated Incentive Investment Plan and Allegis Group Investment Growth Plan ("the Committee") (collectively "Allegis"). ECF 9. Allegis has filed a partial motion to dismiss one of the two counts of the Amended Complaint, which alleges a claim for violation of ERISA's anti-interference provision, 29 U.S.C. § 1140 (ERISA § 510). ECF 10. Plaintiff opposed the motion, ECF 11, and Allegis filed a reply, ECF 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Allegis's partial motion to dismiss will be granted.

## I.    FACTUAL BACKGROUND

The facts described herein are derived from Plaintiff's Amended Complaint, ECF 9, and are taken as true for purposes of this motion. Plaintiff worked for Allegis Group subsidiaries for about 20 years, most recently as Director of Sales Operations for Actalent, Inc. in Illinois. *Id.* ¶¶ 6, 15–17. Previously, he worked for Aerotek, Inc. (another Allegis subsidiary) in a variety of roles. *Id.* ¶¶ 15–16. Actalent focuses on engineering and sciences staffing, and Plaintiff oversaw those

1

operations in Illinois markets. *Id.* ¶ 16–17. During his tenure with the Allegis companies, Plaintiff was selected to participate in deferred compensation programs offered to a select group of management employees, the "Incentive Investment Plan" (IIP) and "Investment Growth Plan" (IGP). *Id.* ¶¶ 2, 18. Those plans contain restrictive covenants including 30-month non-compete and confidentiality provisions. *Id.* ¶ 24. Persons in compliance with the restrictive covenants receive quarterly payments from the plans over 30 months following separation from Allegis. *Id.* ¶ 44. The plans are administered by the Committee, which has full discretionary authority to act consistent with the Plan's terms. *Id.* ¶ 49.

In December, 2023, Plaintiff decided to relocate out of Illinois to be closer to extended family. *Id.* ¶¶ 20–21. He informed his supervisor, who offered to explore other opportunities to retain Plaintiff in an Allegis subsidiary. *Id.* ¶¶ 21–22. Plaintiff also consulted with Dana Baughns, the Chief Legal Counsel for Allegis Group, about the restrictive covenants. *Id.* ¶¶ 25–26. Ms. Baughns advised Plaintiff that he would be "clean" if he stayed away from the work he performed in Illinois or avoided engineering work altogether. *Id.* ¶ 27.

Plaintiff decided to create a new business, Industrial Talent Group, focusing on skilled trades staffing (which is handled by Aerotek, not Actalent) and operating solely in Colorado markets. *Id.* ¶¶ 30–31. On or about April 8, 2024, Allegis paid Plaintiff $75,237 in earned benefits, representing the first quarterly installment of deferred compensation from the IIP and IGP plans. *Id.* ¶ 34. About one month later, however, Allegis allegedly discovered that Plaintiff had started Industrial Talent Group. *Id.* ¶ 36. The Committee launched an investigation of Plaintiff's work activities between October–December of 2023 and eventually concluded that he had violated his confidentiality and competitive activity restrictions. *Id.* ¶¶ 38–39. Specifically, it determined that he had accessed internal documents and created a Colorado engineering market analysis while still

employed, which the Committee deemed a confidentiality violation, and established Industrial Talent Group, which it found to be competitive activity. *Id.* ¶ 40. The Committee has refused to make further quarterly payments to Plaintiff, depriving him of approximately $1,602,892 he was owed. *Id.* ¶ 52.

On September 4, 2025, Plaintiff filed a request for review of the Committee's adverse benefit determination. *Id.* ¶ 70. Following review, the Committee affirmed its denial of benefits and also announced an intent to recoup the original $75,237 payment it had made to Plaintiff under the plans. *Id.* ¶ 72.

## II.    LEGAL STANDARDS

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S.

at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the

court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.     ANALYSIS

In Count II, Plaintiff alleges "Retaliation in Violation of 29 U.S.C. § 1140." ECF 9 at 12. That provision, which is captioned, "Interference with protected rights," reads:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. Plaintiff asserts that the Committee's decision, announced in November, 2025, to seek recoupment of his initial $75,237 in IIP and IGP benefits constitutes a violation of the statute because it was retaliation for his protected activity seeking review of the Committee's benefit denial.

Plaintiff's claim, however, sounds in the standard for retaliation claims in an employment discrimination context and not ERISA's distinct standard for interference with protected rights. While, in an employment context, any action that might discourage protected conduct can constitute retaliation, ERISA's definition of interference requires specific prohibited conduct, which is "to discharge, fine, suspend, expel, discipline, or discriminate against a participant." *Id.* Plaintiff appears (based on his selected quotation from that statute in his Amended Complaint) to be trying to avail himself of the "discriminate against" language, recognizing that none of the others apply. *See* ECF 9 ¶ 67. But he has not alleged any facts to suggest discrimination, or that Plaintiff was treated differently from another similarly situated individual who had not exercised rights to which he was entitled under the IIP's and IGP's provisions.

Of course, this situation presents something of a Catch-22, because, to be similarly situated to Plaintiff, another plan participant would have to have exercised his or her right to request review under the IIP and IPG. Still, Plaintiff has not plausibly pleaded any facts that would suggest a plausible claim of discrimination in this context – that the recoupment occurred because he requested the review and not because he (in the Committee's assessment, at least) had violated the restrictive covenants. Absent such facts, his § 1140 claim must be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, Allegis's partial Motion to Dismiss, ECF 10, is GRANTED and Count II is dismissed without prejudice. Allegis should file its answer to the remaining count asserting wrongful denial of benefits. A separate Order follows.

Dated:  May 18, 2026                                      /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge